**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Allison Elizabeth Cline

    v.                                     Case No. 16-cv-531-PB

Nancy A. Berryhill, Acting
Commissioner, Social
Security Administration


**REPORT AND RECOMMENDATION**


Pursuant to 42 U.S.C. § 405(g), Allison Cline moves to reverse the Acting Commissioner's decision to deny her applications for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income, or SSI, under Title XVI, 42 U.S.C. § 1382. The Acting Commissioner, in turn, moves for an order affirming her decision. For the reasons that follow, the decision of the Acting Commissioner, as announced by the Administrative Law Judge ("ALJ") should be affirmed.


## I. **Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment

> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of
> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB

decisions); see also 42 U.S.C. § 1383(c)(3) (establishing §

405(g) as the standard of review for SSI decisions).  However,

the court "must uphold a denial of social security . . .

benefits unless 'the [Acting Commissioner] has committed a legal

or factual error in evaluating a particular claim.'"  Manso-

Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per

curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting

Commissioner's findings of fact be supported by substantial

evidence, "[t]he substantial evidence test applies not only to

findings of basic evidentiary facts, but also to inferences and

conclusions drawn from such facts."  Alexandrou v. Sullivan, 764

F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner,

360 F.2d 727, 730 (2nd Cir. 1966)).  In turn, "[s]ubstantial

evidence is 'more than [a] mere scintilla.  It means such

relevant evidence as a reasonable mind might accept as adequate

to support a conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d

594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402

U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the [Acting Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Acting Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations omitted).  Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam).  Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).


## II. **Background**

The parties have submitted a Joint Statement of Material Facts.  That statement, document no. 14, is part of the court's record and will be summarized here, rather than repeated in full.

Cline was 22 years old as of the date on which she claims

to have become disabled.  She was first treated for mental health issues in the seventh grade.  Since then, she has been diagnosed with various forms of depression, panic disorder, personality disorder, bipolar disorder, mood disorder, posttraumatic stress disorder ("PTSD"), conversion disorder, and anxiety disorder.  For those impairments she has been treated with medication and several kinds of counseling and therapy.

In March of 2012, Cline spent four days in the psychiatric unit at Samaritan Hospital on a voluntary admission, after she had had suicidal thoughts.  Upon Cline's discharge, Dr. Gary Merrill wrote a Discharge Summary in which he instructed Cline to "follow-up with the Four Winds Partial Hospital Program." Administrative Transcript (hereinafter "Tr.") 345.  Dr. Merrill's Discharge Summary includes a diagnosis of depressive disorder and a suspected diagnosis of borderline personality disorder.  The summary also reports a score on the Global Assessment of Functioning ("GAF") scale.[1]  Dr. Merrill gave Cline

---

[1] "The Global Assessment [of] Functioning [GAF] scale is used to report a clinician's judgment of an individual's overall level of psychological, social, and occupational functioning at the time of evaluation." Gillen v. Colvin, No. 16-cv-59-JL, 2017 WL 775785, at *8 n.5 (D.N.H. Feb. 28, 2017) (quoting Nickerson v. Colvin, No. 15-cv-487-SM, 2017 WL 65559, at *4 (D.N.H. Jan. 6, 2017)) (internal quotation marks and citations omitted).

a GAF score of 45 when she was discharged,[2] which was up from a
score of 40 when she was admitted.[3]

As instructed by Dr. Merrill, Cline followed up with Four
Winds, and participated in the partial hospital program there
for about a month.  When she left the program, a discharge
summary was prepared by Dr. Arlene Nock and social worker
Catherine Johnson.  They made a final diagnosis of major
depressive disorder, recurrent, severe without psychotic
features, and reported the following GAF scores: 35 on
admission,[4] 99 on discharge, and 55 over the previous year.[5]

---

[2] A GAF score of 41 to 50 indicates "[s]erious symptoms (e.g.,
suicidal ideation, severe obsessional rituals, frequent
shoplifting) OR any serious impairment in social, occupational,
or school functioning (e.g., no friends, unable to keep a job)."
Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of
Mental Disorders [DSM-IV-TR] 34 (4th ed. 2000).

[3] A GAF score of 31 to 40 indicates

> [s]ome impairment in reality testing or communication
> (e.g., speech is at times illogical, obscure, or
> irrelevant) OR major impairment in several areas, such
> as work or school, family relations, judgment,
> thinking, or mood (e.g., depressed man avoids friends,
> neglects family, and is unable to work; child
> frequently beats up younger children, is defiant at
> home, and is failing at school.

DSM-IV-TM, supra note 2, at 34.

[4] A GAF score of 91 to 100 indicates "[s]uperior functioning in a
wide range of activities."  DSM-IV-TM, supra note 2, at 34.

[5] A GAF score of 51 10 60 indicates "[m]oderate symptoms (e.g.,

After Cline applied for DIB, she was sent to Dr. Brett Hartman for a consultative examination.[6]  Dr. Hartman examined Cline and wrote a Psychiatric Evaluation in which he listed four diagnoses, including bipolar 2 disorder.  His evaluation includes the following medical source statement:

> The claimant is able to follow and understand simple directions and instructions and is able to perform simple tasks.  She has mild difficulty maintaining attention and concentration.  She has moderate difficulty maintaining a regular schedule.  She has a fair ability to learn new tasks, but mild difficulty performing complex tasks independently.  She has a mild to moderate difficulty making appropriate decisions.  She has moderate difficulty relating adequately with others and moderate difficulty dealing appropriately with the normal stressors of life.

Tr. 446.

The record also includes a Psychiatric Review Technique ("PRT")[7] assessment and a mental residual functional capacity

---

flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  DSM-IV-TM, supra note 2, at 34.

[6] "A consultative examination is a physical or mental examination or test purchased for [a claimant] at [the Social Security Administration's] request."  20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1).

[7] The Social Security Administration uses the PRT to evaluate the severity of mental impairments.  See 20 C.F.R. §§ 404.1520a & 416.920a (describing the PRT).

("RFC")[8] assessment, both attributed to Dr. M. Marks, a non-examining state-agency consultant.  However, because the ALJ whose decision is under review here did not indicate how much weight was given to the opinions expressed in Dr. Marks' assessments, or even expressly mention those assessments,[9] there is no need to describe them in detail.  Finally, the record does not appear to include any opinions on claimant's mental RFC from treating sources.

After Cline's claims were denied at the initial level, she received a hearing before an ALJ.  At the hearing, the ALJ heard testimony from a vocational expert ("VE").  The ALJ asked the VE whether there were any unskilled jobs that could be performed by a person of claimant's age, with claimant's vocational history, and with the following limitations:

> able to perform at a medium exertional level as statutorily stated; is able to perform simple, routine tasks; able to follow and understand simple instructions and directions; able to perform some complex task[s] with occasional supervision; able to make simple work related decisions; able to

---

[8] "Residual functional capacity" is a term of art that means "the most [a claimant] can still do despite [her] limitations."  20 C.F.R. §§ 404.1519 & 416.919.

[9] Respondent acknowledges that the ALJ said nothing about Dr. Marks' opinions, but asserts that the ALJ implicitly indicated reliance on those opinions by crafting an RFC that is consistent with them and by citing a Social Security Ruling that governs the evaluation of opinions from state-agency consultants.

occasionally manage change to workplace environment or
task; and able to have superficial and transactional
contact with coworkers and the general public, but
requires a small group work environment of 10 or fewer
coworkers, or an individual work environment.

Tr. 198-99.  The VE testified that such a person could do three

jobs: (1) router; (2) cleaner, housekeeping; and (3) addresser.

Then, when claimant's counsel questioned the VE, the following

exchange took place:

Q  Now in addition to the last hypothetical you were
given, if we were to add the additional limitation
that a person would have up to three unplanned
absences per month for medical reasons, would they be
able to maintain this type of employment?

A  No.

Tr. 200-01.

After Cline's hearing, the ALJ issued a decision that

includes the following relevant findings of fact and conclusions

of law:

3.  The claimant has the following severe impairments:
depression, anxiety, posttraumatic stress disorder
(PTSD) and cannabis abuse (20 CFR 404.1520(c) and
416.920(c)).

.  .  .  .

4.  The claimant does not have an impairment or
combination of impairments that meets or medically
equals the severity of one of the listed impairments
in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925
and 416.926).

. . . .

5.  After careful consideration of the entire record,
the undersigned finds that the claimant has the
residual functional capacity to perform a full range
of work at all exertional levels but with the
following nonexertional limitations: able to perform
simple routine tasks; able to follow and understand
simple instructions and directions; able to perform
some complex tasks with occasional supervision; able
to make simple work-related decisions; able to
occasionally manage change to workplace environment or
tasks; able to have superficial and transactional
contact with co-workers and the general public; and
she requires a small group work environment of 10 or
fewer co-workers or an individual work setting.

. . . .

6.  The claimant is unable to perform any past
relevant work (20 CFR 404.1565 and 416.965).

. . . .

10.  Considering the claimant's age, education, work
experience, and residual functional capacity, there
are jobs that exist in significant numbers in the
national economy that the claimant can perform (20 CFR
404.1569, 404.1569(a), 416.969, and 416.969(a)).

Tr. 146, 149, 151, 157, 158.  The ALJ concluded by determining

that Cline was able to perform the jobs of router, cleaner/

housekeeper, and addresser.


### III. Discussion

**A.    The Legal Framework**

To be eligible for disability insurance benefits, a person

must: (1) be insured for such benefits; (2) not have reached

retirement age; (3) have filed an application; and (4) be under

a disability. 42 U.S.C. §§ 423(a)(1)(A)-(D). To be eligible

for supplemental security income, a person must be aged, blind,

or disabled, and must meet certain requirements pertaining to

income and assets. 42 U.S.C. § 1382(a). The question in this

case is whether the ALJ correctly determined that Cline was not

under a disability from January 1, 2012, through February 24,

2015.

To decide whether a claimant is disabled for the purpose of

determining eligibility for either DIB or SSI benefits, an ALJ

is required to employ a five-step process. See 20 C.F.R. §§

404.1520 (DIB) and 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in
> substantial gainful work activity, the application is
> denied; 2) if the [claimant] does not have, or has not
> had within the relevant time period, a severe
> impairment or combination of impairments, the
> application is denied; 3) if the impairment meets the
> conditions for one of the "listed" impairments in the
> Social Security regulations, then the application is
> granted; 4) if the [claimant's] "residual functional
> capacity" is such that he or she can still perform
> past relevant work, then the application is denied; 5)
> if the [claimant], given his or her residual
> functional capacity, education, work experience, and
> age, is unable to do any other work, the application
> is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20

C.F.R. § 416.920).

The claimant bears the burden of proving that she is disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  She must do so by a preponderance of the evidence.  See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)).  However,

> [o]nce the [claimant] has met his or her burden at
> Step 4 to show that he or she is unable to do past
> work due to the significant limitation, the
> Commissioner then has the burden at Step 5 of coming
> forward with evidence of specific jobs in the national
> economy that the [claimant] can still perform.  Arocho
> v. Sec'y of Health & Human Servs., 670 F.2d 374, 375
> (1st Cir. 1982).

Seavey, 276 F.3d at 5 (parallel citations omitted).  Finally,

> [i]n assessing a disability claim, the [Commissioner]
> considers objective and subjective factors, including:
> (1) objective medical facts; (2) [claimant]'s
> subjective claims of pain and disability as supported
> by the testimony of the [claimant] or other witness;
> and (3) the [claimant]'s educational background, age,
> and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

**B.   Cline's Claims**

Cline claims that the ALJ made six errors in determining that she was not disabled.  The court is not persuaded by any of those claims of error.

1.  Bipolar Disorder

Cline first claims that the ALJ committed reversible error
by failing to determine that her bipolar disorder was a severe
impairment at step 2 of the sequential analysis, and that the
ALJ's error at step 2 led to both an error at step 3 and to an
erroneous RFC assessment.  The court begins by describing the
way the ALJ handled claimant's diagnosis of bipolar disorder and
then analyzes Cline's claim under the applicable law.

In discussing step 2, the ALJ: (1) listed depression,
anxiety, PTSD, and cannabis abuse as severe impairments; (2) did
not say anything about bipolar disorder; and (3) after a
detailed analysis of medical records, expressly determined that
the physical impairments Cline claimed were all non-severe.

At step 3, the ALJ determined that "[t]he severity of the
claimant's mental impairments, considered singly and in
combination, do not meet or medically equal the criteria of
listings 12.04, 12.06, and 12.08."[10]  Tr. 149.  The ALJ did not
mention claimant's diagnosis of bipolar disorder when discussing
step 3, but when explaining why none of claimant's severe mental

_____

[10] Listing 12.04 covers affective disorders, which include
depressive syndrome, manic syndrome, and bipolar syndrome.  See
20 C.F.R. Pt. 404, Subpt. P, App. 1.  Listing 12.06 covers
anxiety related disorders, and listing 12.08 covers personality
disorders.  See id.

impairments met or medically equaled the severity of any listed impairment, the ALJ relied extensively on the findings from Dr. Hartman's psychiatric evaluation, which includes a diagnosis of bipolar 2 disorder.

Finally, the ALJ's RFC assessment includes numerous references to bipolar disorder.  Specifically, the ALJ mentioned, and cited records documenting: (1) Cline's claim that she was disabled due to bipolar disorder, see Tr. 152; (2) a diagnosis of bipolar disorder by a treating psychiatrist, see Tr. 153; (3) Dr. Hartman's diagnosis of bipolar disorder, see Tr. 154; (4) claimant's report of a history of bipolar disorder to a physician; see Tr. 155; (5) a diagnosis of bipolar disorder by another psychiatrist, see id.; (6) a diagnosis of rule-out bipolar disorder by a treating counselor, see Tr. 156; and (7) a diagnosis of bipolar disorder by a physician's assistant, see Tr. 157.  Finally, when determining claimant's RFC, the ALJ accorded great weight to the opinion of Dr. Hartman which, as noted above, includes a diagnosis of bipolar disorder.

Turning to the applicable law, it is well established "that an error in describing a given impairment as non-severe is harmless so long as the ALJ found at least one severe impairment . . . progressed to the next step of the sequential evaluation,"

13

Lavoie v. U.S. SSA, No. 15-cv-209-PB, 2016 WL 3554963, at *2
(D.N.H. June 24, 2016) (quoting Chabot v. U.S. SSA, No. 13-cv-
126-PB, 2014 WL 2106498, at *9 (D.N.H. May 20, 2014)), and
"properly evaluated all of [the claimant's] impairments in
determining whether she was disabled," Lavoie, 2016 WL 3554963,
at *2 (citing Hines v. Astrue, No. 11-cv-184-PB, 2012 WL
1394396, at *12-13 (D.N.H. Mar. 26, 2012)).  However, while "an
ALJ has 'considerable latitude in how' [he or] she considers
non-severe impairments, Chabot, 2014 [WL 2106498, at *10], [he
or] she may 'not disregard individual, non-severe impairments
where the claimant's collective impairments are severe,' Forni
v. Barnhart, [No. 05-cv-406-PB, 2006 WL 2956293, at *8 (D.N.H.
Oct. 17, 2006)]."  Lavoie, 2016 WL 3554963, at *3.

According to Cline, because the ALJ did not find her
bipolar disorder to be a severe impairment at step 2, the ALJ
necessarily erred at step 3 by failing to consider all of her
impairments in combination, thus violating the mandates of 20
C.F.R. §§ 404.1526(b)(3) and 416.926(b)(3).  Claimant is
mistaken.  "In assessing whether a claimant is disabled, an ALJ
must consider 'the combined effect of all of a claimant's
impairments,' regardless of whether those impairments are
classified as 'severe.'"  Lavoie, 2016 WL 3554963, at *3

14

(quoting McDonald v. Sec'y of HHS, 795 F.2d 1118, 1126 (1st Cir. 1986); citing 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 404.1523) (emphasis added). Thus, failure to deem an impairment severe does not automatically lead to an error at step 3. Rather, the relevant question is whether the ALJ properly determined that claimant did not have a combination of impairments that medically equals the severity of a listed impairment.

Turning to that question, the court notes that claimant does not indicate which listed impairment her condition medically equals. Given her focus on bipolar disorder, the court presumes that she is claiming that after a proper consideration of her bipolar disorder, the ALJ would have found that her condition was the medical equivalent of one of the three listed affective disorders, i.e., depressive syndrome, manic syndrome, or bipolar syndrome. However, substantial evidence supports the ALJ's determination that claimant's condition did not medically equal any listing-level affective disorder.

Under the circumstances of this case,[11] to prevail on her

---

[11] The court uses that qualifier for the following reason. To equal the severity of listing 12.04, a claimant's condition must satisfy either the criteria listed in paragraphs A and B of the listing, or the criteria listed in paragraph C. Claimant has given the court no reason to believe that she is arguing that

first claim, Cline must show that her impairments, in
combination, satisfy at least two of the so-called paragraph B
criteria:

> 1. Marked restrictions of activities of daily
> living; or

> 2. Marked difficulties in maintaining social
> functioning; or

> 3. Marked difficulties in maintaining
> concentration, persistence, or pace; or

> 4. Repeated episodes of decompensation, each of
> extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04B.  In
evaluating claimant's severe affective disorder of depression at
step 3, the ALJ relied upon the opinion of Dr. Hartman, who had,
in fact, diagnosed claimant with bipolar disorder, the specific
impairment that claimant criticizes the ALJ for ignoring.  The
ALJ gave great weight to Dr. Hartman's opinion, and in reliance
upon that opinion, determined that claimant's condition did not
satisfy any of the paragraph B criteria, which apply to all
three of the affective disorders described in listing 12.04.  On
that basis, and given the ALJ's considerable latitude in when it

---

her condition satisfies the paragraph C criteria.  Thus, for her
mental impairment(s) to medically equal the severity of any of
the three listed affective disorders, she must satisfy the
paragraph B criteria (along with the paragraph A criteria).

comes to considering non-severe impairments, see Lavoie, 2016 WL 3554963, at *3, the court cannot agree that the ALJ's failure to determine that claimant's bipolar disorder was a severe impairment led to an error at step 3.

Equally unpersuasive is Cline's claim that the ALJ erred in determining her RFC by failing to consider her bipolar disorder. As Judge Barbadoro has explained:

> [D]iscussion of a non-severe impairment throughout a decision can be sufficient to show consideration, at least where there is no evidence suggesting the contrary. See [Chabot, 2014 WL 2106498, at *9-10] (collecting cases). Further, although the ALJ must consider the functional limitations effected by a non-severe impairment, he or she need not address every diagnosed impairment. See McDonough [v. U.S. SSA, No. 13-cv-164-PB, 2014 WL 2815782, at *12 (D.N.H. June 23, 2014)].

Barup v. U.S. SSA, No. 16-cv-62-PB, 2017 WL 1194644, at *10 (D.N.H. Mar. 31, 2017). In this case, the ALJ made multiple references to diagnoses of bipolar disorder when discussing Cline's RFC. And, in formulating Cline's RFC, the ALJ relied exclusively on the opinion of a medical source who had diagnosed her with bipolar disorder. Claimant, however, like the claimant in McDonough, criticizes the ALJ for failing to take a diagnosis into account when assessing her RFC, but "provides no discussion of any limiting effects arising from that diagnosis that the ALJ should have considered or incorporated into the RFC." 2014 WL

2815782, at *12.  Beyond that, claimant identifies no support,
in the form of a medical source opinion, for any limitation
resulting from bipolar disorder that the ALJ erroneously
excluded from her RFC.  So, as with Cline's claim that the ALJ's
purported step 2 error resulted in an error at step 3, her claim
that the ALJ's purported mishandling of her bipolar disorder led
to an erroneous RFC assessment is unavailing.

     In support of her step 2 claim, Cline relies upon several
decisions from this district, but none are sufficiently
analogous to provide the support she seeks from them.  For
example, in <u>Lavoie</u>, the ALJ found that the claimant had five
severe physical impairments, but determined that the only mental
impairment she claimed, depression, was not severe.  <u>See</u> 2016 WL
3554963, at *2.  This is how Judge Barbadoro described the
manner in which the ALJ handled the claimant's depression after
deeming it to be non-severe:

> [A]t step three, the ALJ discussed each of Lavoie's
> severe impairments — fibromyalgia, diabetes, carpal
> tunnel syndrome, breathing disorders, and headaches —
> but did not discuss Lavoie's depression in combination
> with her fibromyalgia.  And, like in <u>Forni</u> and <u>Morse</u>
> [<u>v. Colvin</u>, No. 14-cv-18-LM, 2015 WL 1243169 (D.N.H.
> Mar. 17, 2015)], the ALJ did not analyze Lavoie's
> depression in calculating her RFC.  Instead, the RFC
> assessment included an extended discussion of the
> medical evidence, and Lavoie's credibility concerning,
> her "severe" impairments, but not her depression.  The
> ALJ's decision thus suggests that she impermissibly

dropped Lavoie's depression from her analysis in
calculating Lavoie's RFC, and only considered Lavoie's
"severe" impairments at that point.

2016 WL 3554963, at *3 (footnotes and citations to the record

omitted).

In Lavoie, the ALJ found that the claimant had no severe

mental impairments, and Judge Barbadoro remanded because the ALJ

failed to properly consider the claimant's non-severe mental

impairment of depression in combination with her severe physical

impairments.[12]  Here, by contrast, while Cline faults the ALJ for

failing to properly consider a mental impairment that was found

to be non-severe, the ALJ also found that Cline had three (or

four) severe mental impairments, including depression, which,

like bipolar disorder, is an affective disorder.  Moreover, the

ALJ mentioned bipolar disorder repeatedly when discussing

claimant's RFC.  And, both at step 3 and in the RFC assessment,

the ALJ relied exclusively upon the opinion of a medical expert

who had diagnosed Cline with bipolar disorder.  Thus, this case

is entirely distinguishable from Lavoie.  While the ALJ could

have said more about Cline's bipolar disorder, there was no

---

[12] In this regard, Forni and Morse are of a piece with Lavoie; in
each of those cases the ALJ determined that the claimant had
several severe physical impairments but dropped the claimant's
non-severe mental impairments from the analysis after step 2.

obligation to do so, and it is simply not accurate to say that the ALJ dropped bipolar disorder from the analysis after step 2, which was the ALJ's error in Lavoie. In sum, there is nothing in Lavoie, Forni, or Morse that would compel, or even support, a determination that the ALJ mishandled Cline's bipolar disorder.

    2.   Decompensation

    Cline next argues that the ALJ's finding that she "has experienced no episodes of decompensation, which have been of extended duration," Tr. 150, is not supported by substantial evidence. The parties frame this issue in terms of whether the facts concerning Cline's various diagnoses and treatments fall within the applicable regulatory definitions. There is, however, a more fundamental problem with this claim. Even if claimant is correct, and the ALJ erred by determining that she had experienced no episodes of decompensation,[13] that error would not merit a remand.

    The ALJ considered the issue of decompensation while

---

[13] For what it is worth, in the mental RFC assessment that is reported in the Disability Determination Explanation form that was generated by Cline's application for DIB, Dr. Marks found that claimant had one or two repeated episodes of decompensation, each of extended duration. See Tr. 212. But, as the court has noted, the ALJ cited neither Dr. Marks' PRT assessment nor his RFC assessment. The court can only guess as to the reason(s) for those omissions, but declines to do so.

performing a step 3 analysis.  For a claimant's impairment or combination of impairments to meet or medically equal the severity of any of the listings at issue in this case, that claimant must establish that the impairment satisfies two of the four paragraph B criteria, one of which is "[r]epeated episodes of decompensation, each of extended duration."  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 12.04B, 12.06B & 12.08B.  The problem with Cline's claim is that while she challenges the ALJ's finding on one of the four paragraph B criteria, she does not contend that the ALJ made erroneous findings on any of the other paragraph B criteria.  As a consequence, even if the ALJ's finding on decompensation is erroneous, that error, standing alone, would not support a remand because an impairment that satisfies only one of the four paragraph B criteria does not meet or medically equal any of the listings at issue.

### 3. Treating Psychiatrist Opinions

Cline's third claim arises from the following statement in the ALJ's decision: "The undersigned has accorded Drs. Merrill and Nock little weight in assessing the claimant's functional capacity, as their GAFs scores are totally inconsistent and were established with very little treatment history."  Tr. 153.  The ALJ made that statement after reporting Dr. Merrill's assessment

of a GAF of 40 upon Cline's admission to Samaritan Hospital and
Dr. Nock's assessment of a GAF of 99 upon Cline's discharge from
the Four Winds partial hospital program.  And, given that the
GAF scores that Drs. Merrill and Nock gave Cline appear to be
the only portions of the documents they produced that could
count as opinions, the court understands Cline's claim to be
limited to the ALJ's decision to discount the GAF scores
reported by Drs. Merrill and Nock.

The court begins by noting that while the GAF was included
in the fourth edition of the Diagnostic and Statistical Manual
of Mental Disorders ("DSM"), "[t]he Fifth Edition of the [DSM],
published in 2013, does not employ GAF scores." Floyd v.
Berryhill, No. 15-cv-456-PB, 2017 WL 2670732, at *3 n.3 (D.N.H.
June 21, 2017); see also King v. Colvin, 128 F. Supp. 3d 421,
439 (D. Mass. 2015) ("Indeed, the American Psychiatric
Association has moved away from the GAF system in recent
years."). Moreover, in this district, Judge Laplante "has
repeatedly noted [that] 'there is no statutory, regulatory, or
other authority requiring the ALJ to put stock in a GAF score in
the first place.'" Johnson v. Comm'r, SSA, No. 13-CV-525-JL,
2015 WL 1119977, at *4 n.3 (D.N.H. Mar. 12, 2015) (quoting
Chapin v. Astrue, No. 11-cv-286-JL, 2012 WL 4499273, at *6

(D.N.H. Sept. 28, 2012); citing <u>Kornecky v. Comm'r of Soc. Sec.</u>,
167 F. App'x 496, 511 (6th Cir. 2006));[14] <u>but see</u> <u>Lopez-Lopez v.</u>
<u>Colvin</u>, 138 F. Supp. 3d 96, 110-113 (D. Mass. 2015)),
<u>reconsidered in part by</u>, 144 F. Supp. 3d 260 (D. Mass. 2015)
(explaining that SSA may consider GAF scores, and remanding
where ALJ did not mention that claimant was given at least 20
GAF scores of 50 or lower over 16 months and gave no specific
reasons for rejecting opinions of treating sources who assigned
those scores).  If an ALJ does not need to put any stock in GAF
scores in the first place, the ALJ's purportedly erroneous
handling of claimant's GAF scores provides no basis for a
remand.  Accordingly, Cline's third claim fails.

---

[14] As for why ALJs need not put stock in GAF scores, Judge
Nivison has provided the following useful insight:

> GAF scores, even if consistent over time, are not a
> substitute for a treating source statement that
> addresses a claimant's limitations in functional
> language.  <u>Grover v. Colvin</u>, No. 2:15-cv-00204, 2016
> WL 183645, at *7 (D. Me. Jan. 14, 2016) (citing
> <u>LeBlanc v. Colvin</u>, No. 2:13-cv-00348, 2014 WL 5431567,
> at *4 (D. Me. Oct. 24, 2014) (observing that "[a] GAF
> score, standing alone, does not necessarily indicate
> an inability to work or to perform specific work-
> related functions" and that "a GAF score is nothing
> more than a snapshot of a particular moment")
> (citations and internal quotation marks omitted)).

<u>Littlefield v. Berryhill</u>, No. 1:16-cv-486-JCN, 2017 WL 2804898,
at *2 n.3 (D. Me. June 28, 2017).

4.  Evaluation of Claimant's Symptoms

In her fourth claim, Cline asserts that the ALJ erred in three different ways when assessing her symptoms.

Cline's first two claims arise from the following passage in the ALJ's decision:

> [O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning.  For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

Tr. 151-52.  Claimant begins by asserting that the ALJ erred by requiring "that the intensity of [her] symptoms be sustained by objective medical evidence," Cl.' Mem. of Law (doc. no. 8-1) 11, but the ALJ did no such thing.  Rather, the ALJ merely described, correctly, the analytical path prescribed by the applicable regulations when a claimant's statements about her symptoms are not substantiated by objective medical evidence.  See 20 C.F.R. §§ 404.1529(c)(3)-(4) & 416.929(c)(3)-(4).  Next, Cline claims that the ALJ erred by stating that it was necessary to evaluate the extent to which her symptoms limit her

"functioning" as opposed to limiting her ability to work. Given that the regulations themselves describe a claimant's ability to work in terms of her residual _functional_ capacity, claimant's argument on this point amounts to nothing more than irrelevant semantic hair-splitting.

Claimant's third argument is that the ALJ "erred in assessing [her] credibility because he did not identify specific reasons for questioning her credibility." Cl.'s Mem. of Law (doc. no. 8-1) 12. To support that argument, she focuses on the ALJ's statement that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible for the reasons explained in this decision." Tr. 152. The problem with claimant's argument is that the statement she criticizes as "conclusory" is followed by a nearly five-page discussion that touches on many of the factors that are identified in 20 C.F.R. §§ 404.1529(c)(3)(i)- (vii) and 416.929(c)(3)(i)-(vii) as bearing upon the credibility of a claimant's statements about her symptoms. More specifically, the ALJ's assessment of the credibility of claimant's statements is based on evidence concerning: (1) her activities of daily living, _see_ Tr. 154, 157; 20 C.F.R. §§ 404.1529(c)(3)(i) & 416.929(c)(3)(i); (2) the medications she

was taking to alleviate the symptoms of her impairments; <u>see</u> Tr. 152, 153, 154, 156; 20 C.F.R. §§ 404.1529(c)(3)(iv) & 416.929(c)(3)(iv); and (3) the effectiveness of the treatment she was receiving, <u>see</u> Tr. 152, 153, 156, 157; 20 C.F.R. §§ 404.1529(c)(3)(v) & 416.929(c)(3)(v). Finally, the ALJ stated that "there is evidence that the claimant has not been entirely compliant in taking prescribed medications, which suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application." Tr. 157. In short, claimant is incorrect when she accuses the ALJ of failing to identify evidence to support the credibility assessment in the decision.

Because none of claimant's three assertions about the ALJ's credibility assessment has merit, her fourth claim fails.

5. <u>Missing Limitation (RFC)</u>

Cline next claims that the ALJ erred in determining her RFC by failing to explain the absence of Dr. Hartman's statement that "[s]he has moderate difficulty maintaining a regular schedule," Tr. 446, and, as a result, impermissibly assigned her an RFC that was not supported by an expert opinion.

In support of her claim, Cline cites several cases, including <u>Grenier v. Colvin</u>, No. 14-cv-153-PB, 2015 WL 5095899

(D.N.H. July 2, 2015).  <u>Grenier</u>, in turn, describes the

following legal principles:

> 20 C.F.R. § 416.927(c) requires the Commissioner
> to evaluate "every medical opinion" that a claimant
> submits, "[r]egardless of its source."  20 C.F.R. §
> 416.927(c).  Accordingly, an ALJ "must explain in the
> decision the weight given to . . . any opinions from
> treating sources, nontreating sources, and other
> nonexamining sources . . . ."  20 C.F.R. §
> 416.927(e)(2)(ii).  Ordinarily, therefore, an ALJ's
> failure to consider a medical opinion in the record at
> all is legal error that requires remand.  <u>See</u> <u>Nguyen</u>
> <u>v. Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999).  This
> general rule is not unwavering; thus, an ALJ need not
> address specific evidence in the record that either
> does not support the claimant's position or simply
> repeats other evidence that the ALJ's decision does
> consider.  <u>See</u> <u>Lord v. Apfel</u>, 114 F. Supp. 2d 3, 13
> (D.N.H. 2000).

<u>Grenier</u>, 2015 WL 5095899, at *2.

The problem with Cline's claim is that she has not shown

that the evidence she charges the ALJ with excluding from her

RFC actually supports her position.  In <u>Grenier</u>, Judge Barbadoro

remanded a denial of benefits because the ALJ failed to address

a consultative examiner's opinions that the claimant could

understand and remember instructions (both short and simple and

slightly complex) and could concentrate and complete tasks

adequately "within a structured supportive one-on-one setting,"

<u>Grenier</u>, 2015 WL 5095899, at *2.  According to Judge Barbadoro,

because a VE "testified that adding a one-on-one work setting

limitation to [the claimant's] RFC would render he claimant
unable to find work," id. at *3, the limitation at issue "would,
if taken as true, support [the claimant's] position," id., and,
as a consequence, the ALJ committed reversible error by failing
to address it.  In Marshall v. Astrue, on which claimant also
relies, the matter was remanded because the ALJ did not address
a treating source's opinion that the claimant would be absent
from work about four days per month because of her impairment,
see 08-cv-147-JD, 2008 WL 5396295, at *3 (D.N.H. Dec. 22, 2008),
and a VE testified that such a "level of absenteeism would
preclude competitive employment," id.

     Here, by contrast, it is not even clear that the opinion at
issue represents an actual limitation.  The claimant in Grenier
could only engage in certain work-related activities in a
supportive, structured, one-on-one setting.  The claimant in
Marshall was expected to miss four days of work per month.
Those, plainly, are limitations.  In this case, Dr. Hartman did
not say that Cline could not maintain a regular schedule, only
that she has moderate difficulty in doing so, and having the
ability to do something with difficulty is different from
lacking the ability to do that thing.  Moreover, while claimant
bases her claim on Dr. Hartman's statement, she does not say

how, or to what extent, difficulty maintaining a regular schedule limits her ability to work.  So, it is not at all clear that the statement by Dr. Hartman is an actual limitation in the first place.

Beyond that, both <u>Grenier</u> and <u>Marshall</u> have something that is missing in this case: testimony from a VE specifying the degree to which the limitation at issue would affect a person's ability to work.  In this case, the VE was never asked to testify about how a person's ability to work would be affected by "moderate difficulty maintaining a regular schedule."  Tr. 446.  Without such testimony, the court cannot conclude that the statement at issue is evidence that supports claimant's position.  Accordingly, the ALJ did not commit reversible error by failing to explain why Cline's RFC did not include Dr. Hartman's statement about her difficulty in maintaining a regular schedule.

> 6.  <u>Reliance upon the VE's Testimony at Step 5</u>

Cline's final claim is that the ALJ committed reversible error because: (1) the ALJ's hypothetical question to the VE did not include Dr. Hartman's opinion that she had a "moderate difficulty maintaining a regular schedule," Tr. 446; and (2) the VE testified that "a person [who] would have up to three

unplanned absences per month for medical reasons," Tr. 201,
could not perform the jobs she had identified as available to a
person with claimant's RFC.  The problem with that claim is
obvious on its face.  At claimant's hearing, her counsel did not
ask the VE whether a person could work as a router, cleaner/
housekeeper, or addresser if he or she had a "moderate
difficulty maintaining a regular schedule," Tr. 446, and the
record includes no opinion that claimant "would have up to three
unplanned absences per month for medical reasons," Tr. 201.
Rather, this claim rests upon an equivalence between moderate
difficulty in maintaining a regular schedule and having three
unplanned absences per month, an equivalence that was posited by
claimant's counsel essentially out of thin air.  The
disconnection between the "limitation" for which there is
support in the record and the limitation in the question that
Cline's counsel asked the VE is fatal to Cline's sixth claim.

## IV. Conclusion

Because the ALJ has committed neither a legal nor a factual
error in evaluating Cline's claim, see Manso-Pizarro, 76 F.3d at
16, her motion for an order reversing the Acting Commissioner's
decision, document no. 8, should be denied; the Acting

Commissioner's motion for an order affirming her decision, document no. 12, should be granted; and the clerk of the court should be directed to enter judgment in respondent's favor and close the case.

Any objection to this report and recommendation must be filed within 14 days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file an objection within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_Andrea K. Johnstone_
Andrea K. Johnstone
United States Magistrate Judge

July 31, 2017

cc: Sheila O'Leary Zakre, Esq.
    Terry Ollila, Esq.